UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS GARCIA,

                        Petitioner,                    Case No. 2:15-cv-14018
                                                       Hon. Nancy G. Edmunds
v.

S.L. BURT,

                        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, (4) GRANTING MOTIONS FOR WITHDRAWAL OF ATTORNEY (Dkts. 22 and 25), (5) GRANTING MOTION TO FILE CORRECTED BRIEF (Dkt. 23), AND (6) DENYING PETITIONER'S OTHER MOTIONS (Dkts. 20, 21, and 28)**

        This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254.

Carlos Garcia, ("Petitioner"), was convicted after a jury trial in the Oakland Circuit Court of

five counts of first-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520b, and two

counts of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c.

Petitioner was sentenced to five concurrent terms of 285 months to 50 years for the first-

degree convictions and two concurrent terms of 10 to 15 years for the second-degree

convictions.

        The Court understands Petitioner's multiple pleadings to be raising the following six

claims: (1) the prosecutor committed numerous acts of misconduct, (2) the prosecutor's

expert witness erroneously bolstered the credibility of the victim, (3) the court clerk excused

the wrong alternate juror from deliberations, (4) Petitioner's trial counsel committed

numerous errors, depriving him of the effective assistance of trial counsel, (5) Petitioner

was deprived of the effective assistance of appellate counsel during his direct appeal, and (6) Petitioner is actually innocent.

The Court finds that all of Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant him permission to proceed on appeal in forma pauperis.

Finally, the Court will grant Petitioner's motions to have his counsel withdraw and to file a corrected brief, (Dkts. 22, 23, and 25), but it will deny Petitioner's remaining pro se motions which seek to stay the case, amend the petition, and for an evidentiary hearing. (Dkts. 20, 21, and 28).

## I. Background

The charges against Petitioner stem from allegations that he engaged in a sexual relationship with his step-daughter when she was in middle school.

Marissa Latimer, who was fifteen years old at the time of trial, testified that she went to school with the victim from elementary school through high school. She testified that when the two girls were in the sixth grade she would spend time at the victim's home. Latimer testified that one time while she was at the victim's home Petitioner told the girls how big his penis was. Petitioner also showed the girls a ring he put on his penis to help him maintain an erection. Petitioner told the girls that they were sexy, and he urged them to wear sexier clothing.

Latimer testified that one day at school during the sixth grade, she and another girl saw a letter taped to the victim's locker. They took the letter off of the locker and read it. Latimer took the letter home to her mother, and her mother called Petitioner who came over to retrieve the letter. When Latimer's mother gave Petitioner the letter, he passed it off as

"high school drama."

Jennifer Hart, the victim's mother, testified that she married Petitioner in 2004. Hart testified that when Petitioner first became a part of the victim's life, they had a very close relationship. Hart worked a lot, and so Petitioner would babysit the victim and her young half-sister often.

Hart testified that at some point in time the victim's biological father and Petitioner started to communicate. She overheard a telephone conversation between the two men, and they were saying upsetting things about her. Hart testified that the victim also overheard the conversation.

After Petitioner stopped living with her and the girls, Hart had a conversation with the victim in the Spring of 2007. Hart learned that Petitioner was text-messaging the victim's friends, which Hart though was odd. Hart asked the victim whether Petitioner had ever done anything to her. The victim denied anything had occurred, but the next day she told Hart that Petitioner had been sexually abusing her.

Hart testified that she did not know what to do, and the victim did not want her to tell anyone else. Finally, in November of 2007, Hart told the information to a therapist, and then she told the victim's biological father in March of 2008. He flew in from California, and the three went to the police. The victim was subsequently taken to Care House for an interview.

The Department of Human Services intervened due to Hart's failure to immediately report the alleged acts of sexual abuse, and the victim was moved to Hart's mother's house.

The victim testified that she was fifteen years old at the time of trial. Beginning in the fifth grade she lived with her half-sister, mother, and Petitioner. The victim testified that

initially she had a normal father-daughter relationship with Petitioner, but that changed in the summer before she entered sixth grade when she was eleven years old.

The victim testified that one evening that summer, she asked Petitioner to rub her back, and that when he did so he also put his hand down the front of her pants. She felt him put his hand on her private parts over her underwear. She immediately got up and said she had to go to the bathroom.

The victim testified that multiple incidents of sexual abuse occurred over the following two years. She testified that Petitioner would ask her to go into her mother's bedroom with him when her mother was at work. Petitioner would then touch her breasts and vagina. He occasionally placed his fingers inside her vagina as well. He also directed her to touch his penis.

The victim testified that at times during the sixth grade her friend Marissa Latimer would come over to her house. Petitioner would tell them that they were "hot" and to put on sexier clothing. One day at school during the sixth grade, the victim discovered a letter taped to her locker that contained information about her having a relationship with Petitioner. The victim thought Latimer wrote the note.

The victim testified that the sexual abuse continued through the seventh grade. On one occasion, Petitioner directed her to perform oral sex on him. She also testified that on two occasions he put his penis in her vagina. On another occasion he placed his mouth on her vagina.

The victim testified that she told Petitioner she would not tell anyone else about their sexual relationship. She explained that she was embarrassed and knew the conduct was wrong, and she did not want anyone else to know about it. The victim indicated that

sometimes she liked the sexual contact, but other times she gave in to Petitioner because she noticed that if she did not, Petitioner would treat her mother poorly.

Around Christmas during the eighth grade, the victim stopped allowing Petitioner to touch her. She explained that she saw a television show that depicted the effects similar conduct had on a girl. The victim also testified that sometime during the eighth grade she overheard a conversation between her biological father and Petitioner where the two men spoke about getting the girls away from their mother. The victim testified that her biological father talked about obtaining custody over her for years, and she was not concerned by the threat.

The victim testified that she first told her mother about Petitioner's actions sometime around the Spring of 2007 during the eighth grade. She did not feel comfortable talking about what occurred, and she did not want to go to the police. The victim and her mother did not go to the police until almost a year later, in March of 2008. The victim was also taken to Care House where she told someone what happened with Petitioner. At the time of trial, the victim was living with her grandmother because her mother lost custody due to her delay in taking her daughter to the police.

Amy Allen, a forensic interviewer with Care House, testified as an expert witness for the prosecution. She testified that she interviewed the victim on March 17, 2008, after a referral from the police. Allen met with both of the victim's parents before the interview.

Allen testified regarding the reasons a child or adolescent would delay reporting sexual abuse. She testified that sometimes when the abuse starts at a young age, the child can be uncertain that she was abused. An adolescent may determine that what had occurred should remain secret. Allen also testified that a child may delay disclosing

because she fears she will be disbelieved, or will blame herself for what occurred.

Allen also testified that there are often conflicting emotions, since the child or adolescent still loves the abuser, or may like the sexual contact on some level. Allen testified that it was not unusual for the child not to resist the abuse. Allen testified that it was not unusual after the initial disclosure for a child not to want others to find out about the abuse.

Allen testified that it was not her role to determine whether the victim's allegations of sexual abuse were in fact true.

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above. Following sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. Petitioner's appellate counsel filed an appellate brief, raising the following two claims:

> I. Does the admission into evidence of the testimony regarding the improper sexual comments Appellant allegedly made to Complainant and her friend improper and deny Appellant a fair trial; did thereafter the failure to caution the jury regarding the proper and limited use of this evidence further deny Appellant a fair trial; did trial counsel's failure to object to the admission of this evidence or to insure that Appellant's jury was properly instructed deny him the effective assistance of counsel?

> II. Was the appellant denied a fair trial by the trial court's instruction which impermissibly elevated the complainant's credibility above that of other witnesses?

Petitioner also filed a supplemental pro se brief, raising four additional claims: (1) the prosecutor committed misconduct during closing arguments, (2) the prosecutor withheld evidence that the victim accused her biological father of sexual misconduct, and the victim's mother accused Petitioner of also abusing his other daughter, (3) the prosecutor misstated the evidence during closing argument, and (4) Petitioner was denied the effective

assistance of trial counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Garcia*, No. 289432, 2010 WL 2431913 (Mich. Ct. App. June 17, 2010). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same six claims that he raised in the Michigan Court of Appeals. Petitioner also raised an additional two claims: (1) Petitioner was denied the effective assistance of appellate counsel for failing to properly investigate and raise an ineffective assistance of trial counsel claim, and (2) the clerk of the court pulled juror numbers 5 and 13 to be excused as alternates after trial, but erroneously called numbers 4 and 13 to be excused. The Michigan Supreme Court denied the application because it was not persuaded that the questions should be reviewed. *People v. Garcia*, 790 N.W.2d 399 (Mich. 2010) (Table).

Petitioner then returned to the trial court and filed a pro se motion for relief from judgment. The motion presented five claims: (1) the prosecutor committed misconduct and failed to call all res gestae witnesses, (2) the trial court erred in refusing to provide the deliberating jury with a written copy of the Care House interview, (3) Petitioner's confrontation rights were violated by evidence of the contents of the letter posted on the victim's locker, (4) Petitioner was denied the effective assistance of counsel when his trial attorney failed to subject the prosecutor's case to meaningful adversarial testing, and (5) Petitioner's counsel was ineffective for attempting to convince a witness of Petitioner's guilt, failed to obtain discovery materials, failed to raise a meritorious defense, and for abandoning Petitioner during his direct appeal.

The trial court denied the motion for relief from judgment, finding that Petitioner either raised the claims on direct appeal or because Petitioner failed to show good cause

to excuse his failure to previously raise his claims and actual prejudice as required by Michigan Court Rule 6.508(D)(3). See Dkt. 10-13.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals granted leave to appeal. *People v. Garcia*, No. 309081 (Mich. Ct. App. Nov. 26, 2012). The Court subsequently denied relief in an unpublished opinion that addressed Petitioner's post-conviction claims on the merits. *People v. Garcia*, 2014 WL 1267269 (Mich. Ct. App. Mar. 27, 2014).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but the application was again denied by standard order. *People v. Garcia*, 854 N.W.2d 738 (Mich. 2014) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); see also *Woods v. Etherton,* No. 15-723, 2016 WL 1278478, at *3 (U.S. Apr. 4, 2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## III. Analysis

A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted either because the errors were not preserved in the trial court, not presented on direct appeal, or not presented to the Michigan Supreme Court. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the

federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims, and because he alleges that evidence of his actual innocence excuses his defaults.

B. Prosecutorial Misconduct

Petitioner asserts that the conduct of the prosecutor rendered his trial fundamentally unfair. He first asserts that the prosecutor vouched for and bolstered its witnesses' credibility during closing arguments by referring to the fact that they had taken an oath to testify truthfully. Petitioner also asserts that the prosecutor withheld exculpatory evidence by not disclosing court documents related to a custody battle between the victim's mother and her biological father. He asserts that the victim suggested that her biological father was aggressive and behaved inappropriately towards her in that proceeding, and the information could have been used to attack her credibility. He also asserts that the victim and her mother made complaints to the Department of Human Services and Child

Protective Services that Petitioner had abused his two sisters, a cousin, and his younger daughter, but that the allegations were not pursued by those agencies. Finally, Petitioner asserts that the prosecutor misstated facts by arguing that the custody battle between the victim's mother and biological father had been settled, and that the victim came forward after Petitioner had been permanently removed from her home.

1. Prosecutor Bolstering Credibility of Witnesses

Petitioner first asserts that the prosecutor improperly bolstered the credibility of the prosecution witnesses by repeatedly referring to the fact that they took an oath to provide truthful testimony.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

After reciting the applicable constitutional standard, the Michigan Court of Appeals rejected this claim on the merits during Petitioner's appeal or right as follows:

> Defendant first argues that the prosecutor improperly vouched for the victim when she argued that the victim
>
> > gets to talk to you because she's under oath and she tells you she's going to tell the truth about other embarrassing, how did

she characterize it, embarrassing, gross things. She talks to
you about, because she has to tell the truth when I ask it, why
did you follow [defendant] upstairs?

In making these comments, the prosecutor did not assert that she
possessed independent knowledge that the victim was being truthful and did
not personally vouch for the victim's credibility. The prosecutor did not place
the prestige of her office behind the victim. Rather, the prosecutor was fairly
responding to the defense. Viewing the prosecutor's arguments as a whole,
she was responding to defendant's argument that the victim fabricated the
abuse by pointing out that the victim had not gained anything by coming
forward with the sexual abuse. Instead, the victim was compelled to
testify-because she was under oath at trial and subject to questioning-about
uncomfortable, embarrassing, and intimate details regarding the abuse.

Further, the prosecutor permissibly argued that the jury should
conclude that the victim was credible-not based on the prosecutor's own,
independent knowledge, but because of the evidence and common sense.
"[A] prosecutor may comment on his own witnesses' credibility during closing
argument, especially when there is conflicting evidence and the question of
the defendant's guilt depends on which witnesses the jury believes." *Thomas*,
260 Mich. App. at 455.

Defendant has not established the existence of any plain error in the
prosecutor's arguments; therefore, he cannot prevail on appeal. *Callon*, 256
Mich. App. at 329. Further, defendant has failed to establish that a curative
instruction could not have alleviated any possible prejudicial effect of the
challenged comment. *Id.* at 329-330. In fact, the trial court instructed the jury
that the lawyers' arguments were not evidence, that the jury had to decide
the case based on the evidence, and that it was the jury's role to determine
whether a witness was credible, considering a variety of factors such as a
witness's motivation to tell the truth. The jury is presumed to follow its
instructions. *People v. Graves*, 458 Mich. 476, 486( 1998). Finally, because
the comment was proper, defense counsel cannot be deemed ineffective for
failing to raise an objection to it. *Snider*, 239 Mich. App. at 425.

*Garcia*, 2010 WL 2431913, at *3.

This decision was reasonable. Improper vouching occurs either (1) "when a

prosecutor supports the credibility of a witness by indicating a personal belief in the

witness's credibility thereby placing the prestige of the [prosecutor's office] behind that

witness," or (2) through "comments that imply that the prosecutor has special knowledge

12

of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). As the state appellate court correctly noted, the prosecutor here neither indicated a personal belief in Petitioner's guilt, nor did she imply special knowledge hidden from the jury. Stating that testimony was given under oath does not indicate a personal belief in a witness's veracity. See *Johnson v. Romanowski*, 2008 U.S. Dist. LEXIS 13235 (E.D. Mich. Feb. 21, 2008).

Moreover, as the state court noted, Petitioner's counsel attacked the credibility of the victim during his closing argument by arguing that she fabricated the charges. The prosecution "necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). This claim was reasonably rejected by the state courts in light of the broad constitutional standard enunciated by the Supreme Court.

2. Withholding Exculpatory Evidence

Petitioner next asserts that the prosecutor failed to disclose evidence to the defense. Specifically, Petitioner asserts that at the time of trial there was a custody battle between the victim's mother and her biological father, and that documents in that litigation indicate that the victim or her mother asserted–falsely–that the biological father was aggressive and behaved inappropriately. Petitioner also asserts that the victim and her mother made complaints to the Department of Human Services and Child Protective Services that Petitioner had abused his two sisters, a cousin, and his younger daughter, but that these allegations were not deemed credibly enough to be pursued by those agencies.

This allegation was also rejected by the Michigan Court of Appeals during

Petitioner's direct appeal:

Next, defendant asserts that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), in failing to disclose several items of evidence and investigate certain individuals.

> A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt. In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*People v. Cox*, 268 Mich. App. 440, 448 (2005) (internal citations omitted).]

Defendant argues that the prosecutor withheld exculpatory evidence by failing to call the victim's biological father to testify at trial. We conclude that defendant has failed to establish a *Brady* violation by the prosecutor. A *Brady* violation occurs when the prosecutor withholds favorable evidence from the defense. *Id.* at 448. The biological father was listed as a witness for the prosecution, defendant acknowledges that he knew of this witness and that the witness was present during trial, and there is no indication that the prosecutor withheld his identity or any favorable evidence. Additionally, defendant has offered no record support that this witness would have provided favorable or exculpatory testimony for defendant. *Id.* Finally, defendant has not established that he did not possess the evidence or could not have obtained it with reasonable diligence. *Id.*

Defendant next claims that the prosecutor was aware that the victim and her mother accused defendant of sexually abusing other females. Defendant cites a child protective services intake report dated March 18, 2008, and a petition in child protection proceedings. These documents are not contained in the lower court file. A party cannot expand the record on appeal, and this information may therefore not be considered. *People v. Powell*, 235 Mich. App. 557, 561 n 4 (1999). Moreover, defendant does not allege that the prosecutor failed to disclose this information to defendant; rather, he argues that the prosecutor withheld this evidence from the jury. Such a claim does not establish a *Brady* violation. *Cox*, 268 Mich. App. at 448. Defendant does not allege that the prosecutor withheld these documents or the related information from him before trial. Defendant's brief acknowledges that he was aware of the information. Defense counsel

requested that she be allowed to use information from the neglect case when cross-examining Hart, and the prosecutor indicated that hundreds of pages of discovery were provided to counsel regarding the neglect case. Moreover, during cross-examination of Hart, defense counsel referred to the petition. Defendant has failed to establish that the prosecutor failed to disclose the other alleged accusations to defendant or that defendant did not have the information. *Id.*

Although evidence that the victim and her mother made false accusations that defendant sexually abused other individuals would constitute favorable evidence because it could impeach the victim's and the mother's credibility, see *People v. Lester*, 232 Mich. App. 262, 281-282 (1998), relief is not warranted here, given that defendant failed to show that the prosecutor withheld this information and given that the record supports that defendant was in fact aware of the other accusations and had the petition from the neglect case.

*       *       *

Defendant also asserts that the prosecutor withheld from the jury the victim's letter to a court in California about her biological father. Defendant asserts that the letter contained claims of sexual abuse against her father. Again, defendant argues that the prosecutor withheld the letter from the jury; defendant makes no claim that the prosecutor withheld the evidence from defendant, and a *Brady* violation requires that the evidence be withheld from the defendant. *Id.* Further, the record indicates that defendant knew of the letter and thus could have attempted to present it himself at trial. *Id.* In fact, defense counsel elicited the existence of this letter during cross-examination of the victim. Defendant has failed to prove that he did not possess the letter or that the prosecutor withheld this evidence, given that defense counsel specifically questioned the victim about the letter.

*Garcia*, 2010 WL 2431913, at 5.

This decision did not constitute an unreasonable application of the controlling Supreme Court standard. The state court rejected the allegations of misconduct by finding that Petitioner failed to demonstrate that the items were actually suppressed by the prosecution. The court found that the record demonstrated that Petitioner had actual knowledge of the material. In considering federal habeas petitions, this Court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut

this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). A finding by a state court that evidence was not, in fact, suppressed is subject to this presumption of correctness. *Summers v. Dretke*, 431 F.3d 861, 879 (5th Cir. 2005); *Wisehart v. Davis*, 408 F.3d 321, 324 (7th Cir. 2005).

Petitioner offers no reason why the presumption of correctness should not apply here. Indeed, as noted by the state court, the trial record shows that defense counsel made use of the victim's statement to Allen, made reference to the accusatory letter written by the victim to her biological father, and had been provided the state court record in relation to the neglect case. The victim's biological father was actually physically present at trial.

Furthermore, in order to establish a *Brady* claim, the petitioner must show among other things that the evidence allegedly suppressed by the prosecution was not otherwise known to the petitioner and was not available from another source. See *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). All of the referenced materials were either actually known by Petitioner or were available from another source. This claim was reasonably rejected by the Michigan Court of Appeals.

3. Misstating Facts

Petitioner asserts that the prosecutor improperly misstated the evidence presented at trial. Specifically, he asserts that the prosecutor argued without evidentiary support that the custody battle between the victim's mother and biological father had been settled, and that the victim came forward only after Petitioner had been permanently removed from her home.

This allegation was also rejected on the merits by the Michigan Court of Appeals:

Defendant further asserts that the prosecutor committed misconduct by arguing facts that were not placed in evidence. Prosecutors "may not argue the effect of testimony that was not entered into evidence at trial." *People v. Stanaway*, 446 Mich. 643, 686 (1994).

Defendant first argues that the prosecutor committed misconduct in arguing that the custody dispute between the victim's mother and the victim's biological father was "taken care of" and that there was no evidence of a custody dispute between the mother and defendant. We conclude that, when they are viewed in the context of her whole argument and defendant's defense, the prosecutor's arguments were permissible based on reasonable inferences from the evidence. *Bahoda*, 448 Mich. at 282. The prosecutor was responding to defendant's assertions that the victim fabricated the allegations because she did not like her father and defendant was trying to help him obtain custody of the victim, and that the victim's mother planted the allegations in the victim's mind because of these custody issues. The prosecutor's argument that the custody issue was not increasing and was "handled" was essentially an assertion that the custody issue with the victim's father was nothing new or concerning and would not be an adequate motivation for the victim to lie. This argument was based on record evidence that the victim was in her mother's custody at the time, both the mother and the victim indicated that the custody issue was "nothing new," the victim was not worried about custody being transferred to her father, and both the mother and the victim denied that they fabricated the sexual abuse allegations because of the custody issue. The prosecutor's argument was a permissible response to defendant' theory of the case. *Fields*, 450 Mich. at 115; *Duncan*, 402 Mich. at 16.

Defendant next contends that the prosecutor argued facts not in evidence when she stated that the victim came forward with the report of abuse because she felt safe after defendant left the home. Although the prosecutor's argument was not directly supported by the victim's testimony, we conclude that the prosecutor's argument was nonetheless based on reasonable inferences drawn from the evidence. *Bahoda*, 448 Mich. at 282. The prosecutor inferred that, based on the fact that the victim did not disclose the abuse until defendant had permanently left the home, the victim purposely waited to disclose until he was gone. This was a reasonable inference based on the timing of the disclosure and the victim's testimony that defendant would "get meaner" and treat her mother poorly when the victim avoided the sexual encounters.

*Garcia*, 2010 WL 2431913, at *6-7.

This decision was reasonable. "It is improper for a prosecutor, during closing

arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial'" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (citing *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). Nonetheless, "prosecutors 'must be given leeway to argue reasonable inferences from the evidence.'" *Id.* (citing *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). All of the complained-of remarks stemmed from reasonable inferences based on the testimony of the victim or her mother.

The victim testified that her biological father wanted custody over her since she was born. She testified that she was not worried about the conversation she heard Petitioner have with her biological father because the topic was nothing new to her. Dkt. 10-5, at 156. She testified that she was not afraid her biological father would obtain custody over her. Id., at 139. The victim's mother testified that the victim's biological father once had a court order for visitations, but the visits stopped when the victim was about thirteen years old. Id., at 31. The reference by the prosecutor that the custody dispute was "settled" could be reasonably seen as a reference to the fact that nothing new occurred at the time Petitioner disclosed the abuse with respect to a custody battle that would give rise to a new motivation to falsely accuse Petitioner of abuse. The argument was based on reasonable inferences from the testimony of the victim and her mother.

With respect to the victim coming forward once Petitioner was out of the house, the victim testified that when she had disclosed the abuse to her mother, Petitioner was no longer living with them and had been out of the home for awhile. Id., at 100, 161-62. The victim testified that after she revealed the abuse, she did not see Petitioner again until court proceedings. Id., at 111. The victim also testified that when Petitioner was living in the home she sometimes acquiesced to his demands because he would mistreat her mother

18

when she did not. Id., at 96.   A  reasonable inference from these portions of the  victim's testimony is that a part of the reason she came forward was because Petitioner was no longer in a position to treat her mother poorly. Accordingly, the prosecutor's arguments were fairy based on the testimony of the victim and her mother, or reasonable inferences therefrom. To the extent Petitioner makes additional allegations of misconduct, they are likewise unsupported by the record and involve matters either taken out of context or misstated.[1]

Accordingly, none of Petitioner's allegations of prosecutorial misconduct warrant relief.


## C. Expert Witness Bolstering Victim's Credibility

Petitioner next asserts that the prosecutor's expert witness, Amy Allen, improperly bolstered the credibility of the victim. He argues Allen improperly testified that she interviewed the victim only after Child Protective Services had "substantiated" that the victim had been assaulted.

Evidentiary error "cannot rise to the level of due process violations unless [it] 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). "Whether the admission of prejudicial

---

[1]It is unclear whether Petitioner still asserts that it was error for the prosecutor to present evidence regarding the note taped to the victim's locker. Petitioner asserted in the state courts that the evidence constituted inadmissible hearsay. As the Michigan Court of Appeals correctly noted, however, the note was not offered for the truth of the matter asserted but to show Petitioner's reaction to the allegations. See *Garcia*, 2014 WL 1267269, at *3.

evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical, highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

Allen testified when she was being qualified as an expert witness that Care House accepted referrals "when protective services had substantiated their case, meaning they had at least substantiated that that child had been sexually assaulted." Dkt. 10-5, at 174. But on cross-examination, Allen readily conceded that she did not determine whether the victim was actually assaulted. She testified, "I wouldn't necessarily know whether or not a child was telling the truth. That's not my job to determine that." Id., at 206. When asked if Allen knew whether children were being truthful during the interview, she replied "no." Id., at 208. Even the prosecutor on re-direct elicited testimony from Allen that it was not her job to determine whether the allegations were true. Id., at 208-09.

It would have been unsurprising to the jury that some governmental agencies thought the victim's allegations were "substantiated" enough to warrant criminal charges. If not, charges obviously would never have been made and no trial would have occurred. The danger of *unfair* prejudice would have been testimony that an agency had hidden evidence not presented at trial that indicated Petitioner's guilt or "substantiated" the victim's claim. Allen dispelled any such potential for unfair prejudice when she repeatedly testified that it was not her role to determine whether the victim's allegations were true. In light of her testimony on cross examination and redirect examination, Allen's testimony that Care House obtained referrals of "substantiated" allegations did not render Petitioner's trial fundamentally unfair in violation of due process. The claim does not provide a basis for granting habeas relief.

D. Jury Tampering

Petitioner asserts that his Sixth Amendment right to a jury trial was violated when the trial court clerk drew numbers indicating that Jurors 5 and 13 would be removed as alternates prior to deliberations, but then she called Jurors 4 and 13 to be removed.

First, the claim is belied by the record. The record indicates that the clerk drew and excused Jurors 4 and 13 prior to deliberations. See Dkt. 10-6, at 75. When the jury was polled after reaching its verdict, the record indicates there were no jurors sitting in seats 4 or 13. See Dkt. 10-7, at 7-8.

Even if the factual basis for the claim was true, the claim would fail because Petitioner fails to demonstrate prejudice. In *United States v. Levesque*, 681 F.2d 75, 81 (1st Cir. 1982), the First Circuit held that converting the wrong alternate juror into a regular juror and allowing that alternate juror to deliberate did not violate the substantial rights of the defendant. In *United States v. Olano*, 507 U.S. 725 (1993), the Supreme Court held that the presence of alternate jurors while the main jury was deliberating was plain error, but that the defendant had not carried his burden of showing prejudice that adversely affected the outcome of the proceeding. Petitioner cites no cases standing for the proposition that a mistake in the selection of alternate jurors is a structural error requiring reversal without requiring a demonstration of actual prejudice. Petitioner has not attempted to make such a showing.[2] Accordingly, this claim does not provide a basis for granting habeas relief.

---

[2]Ironically, Petitioner asserts that Juror 4 was someone who he tried to remove for cause prior to trial. See Supplemental Brief, Dkt. 14, at 52.

E. Ineffective Assistance of Trial Counsel

Petitioner raises multiple claims of ineffective assistance of trial counsel. He first alleges that his trial attorney failed to interview and call several defense witnesses related to him that would have undermined the victim and her mother's credibility, and he failed to call a defense expert to counter the testimony of Amy Allen. Petitioner also asserts his counsel failed to object at trial to the prosecutor's improper bolstering arguments, the improper admission of sexual comments made by Petitioner to the victim and her friend, and the improper jury instructions that elevated the victim's credibility.

Ineffective-assistance claims are reviewed under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *Id.* at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

1. Failure to Call Defense Witnesses

Petitioner first asserts that his trial counsel was ineffective for failing to interview and call several witnesses in his defense at trial. This claim was adjudicated on the merits by

the Michigan Court of Appeals during Petitioner's post-conviction review proceeding. After reciting the correct constitutional standard, the state appellate court denied the claim as follows:

Defendant attached three affidavits to his application for leave to appeal, detailing what witnesses would have testified if called at trial. James J. Super and Sudie Lee Super stated in their affidavits that, in March 2007, they were at the home of the victim's mother, defendant stated that he intended to move out of the home, and the victim begged him not to leave her with her drunken mother. First, it should be noted that Ms. Super was called as a witness to make an offer of proof outside the jury's hearing and testified that the victim's mother telephoned Ms. Super, said that she was the only one who could save defendant, and asked to have defendant call her. No questions were asked of Ms. Super regarding the victim's statements to her, her husband, or defendant about not wanting defendant to leave the victim with her mother. Defendant has not established that defense counsel knew of the conversation detailed in the affidavits.

Defense counsel's theory at trial was that the victim was lying about the sexual abuse because she was angry with defendant after she overheard defendant talking to her biological father about custody, that the victim admitted to lying before and changed her testimony several times, and that the victim had lied to the court in the past so that she did not have to visit her biological father. Mr. and Ms. Super's testimony that the victim wanted to stay with defendant and not her mother conflicted with the defense theory that the victim lied to stay with her mother (over her biological father) and did not deprive defendant of a substantial defense. It would seem odd that a child would want to stay with someone who was sexually abusing them, but the victim testified that she sometimes liked the sexual activity with defendant, that she loved defendant and looked up to him, and that they had a father-daughter relationship. Ms. Allen, the expert on sexual abuse, testified that children who are sexually abused sometimes still love their abusers. Because testimony that the victim loved defendant was consistent with the statements of Mr. and Ms. Super regarding the victim wanting to stay with defendant, the defense did not prove that the victim was lying about anything or present an inconsistency. Therefore, defendant was not deprived of a substantial defense and was not prejudiced by trial counsel's decision not to call Mr. and Ms. Super as witnesses. See *Dixon*, 263 Mich. App. at 398.

Next, defendant raised the issue of trial counsel's failure to call his brother as an alibi witness. James A. Super stated in his affidavit that defendant lived at his home from August 18, 2005 to January 5, 2006, that he informed trial counsel of this fact, and that counsel indicated his testimony

was not necessary because he could not provide exact dates. James A. Super also stated that he was present when defendant received a phone call from the victim's mother in March 2007, telling defendant she was going to accuse him of this abuse. However, under defense counsel's questioning, the victim and her mother testified that defendant did not stay at their house throughout the entire period in question, and therefore defendant was not deprived of a substantial defense because of counsel's failure to call his brother as an alibi witness.

Defendant also argues that trial counsel was ineffective for failing to investigate and present lay witnesses Wendy Garcia, Jennifer Knecht, and Thomas Jaworski. Wendy Garcia and Jennifer Knecht, defendant's sisters, state that they would have testified that the victim's mother had a poor reputation in the community for truthfulness and was known as a liar and a drunkard, and that they believed that the allegations were fabricated by the mother to help her in her custody dispute with defendant. Neither was interviewed by trial counsel. Thomas Jaworski, defendant's long time friend who met with trial counsel, would have testified that the victim's mother had a poor reputation for truthfulness, that she accused him of attempted sexual assault when they were both 17, and that he believed she made up the allegations to help her in the custody dispute with defendant.

Although the mother's reputation for truthfulness would have been admissible under MRE 608(a), specific instances of conduct would not have been admissible. MRE 608(b). Further, the lay witnesses' belief that she made up the allegations to assist her in a custody dispute would not have been admissible. Finally, trial counsel made a strategic decision to argue that the victim made up the allegations and not her mother. There was ample evidence to support trial counsel's decision and defendant was not deprived of a substantial defense.

Defendant also argues that the decision not to present these witnesses was not a strategic decision but was instead born out of trial counsel's failure to investigate the case properly. Counsel's failure to reasonably investigate a case can constitute ineffective assistance of counsel. *People v. McGhee*, 268 Mich. App. 600, 626 (2005). Failure to investigate witnesses does not, however, establish inadequate preparation unless the defendant can show that the failure to investigate resulted in a failure to find valuable evidence that would have substantially benefitted the defendant. *People v. Caballero*, 184 Mich. App. 636, 642 (1990). Here, none of the affidavits presented valuable evidence that would have substantially benefitted defendant. Therefore, trial counsel was not ineffective for failing to investigate or present lay witnesses.

Defendant argues that trial counsel was ineffective for failing to hire Dr. Okla, who would have testified as an expert witness that the victim's testimony

was unreliable and questionable due to suggestibility and adolescent brain development. The failure to consult with Dr. Okla was not raised in defendant's application for leave to appeal, and defendant has not provided an affidavit or other offer of proof from Dr. Okla regarding her proposed testimony. Therefore, this argument is beyond the scope of this Court's grant of leave to appeal.

*Garcia*, 2014 WL 1267269, at *7-9.

The detailed fact-sensitive analysis by the state appellate court did not constitute an objectively unreasonable application of the *Strickland* standard. The court recited the factual support Petitioner presented with each allegation of ineffective assistance of counsel, and then it made a reasoned decision applying the *Strickland* framework explaining why Petitioner's counsel did not perform deficiently or why Petitioner was not prejudiced by his counsel's decision not to call each of the defense witnesses for which Petitioner provided an offer of proof.

As for the three witnesses for which Petitioner provided affidavits to the state court, while Petitioner provides several reasons allegedly undercutting counsel's actions and undercutting the state appellate court's analysis, he has not shown that the decision of the state courts was objectively unreasonable. "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

The affidavits of Petitioner's mother and father indicate that they heard the victim say on one occasion that she did not want Petitioner to leave her with her drunken mother. As the state appellate court noted, the presentation of this testimony would have been at odds with Petitioner's theory of defense that the victim falsely accused Petitioner so that she could stay with her mother. This conflict between the uncalled witnesses and the defense

theory provided a reasonable basis for the state court to reject Petitioner's claim.

The affidavit of Petitioner's brother indicated that Petitioner stayed with him for a period of months when the abuse was alleged to have occurred. But as the Michigan Court of Appeals noted, he was unable to provide defense counsel with exact dates. In any event, the victim did not testify to exact dates for the incidents of sexual assault. Under these circumstances it was reasonable for the state appellate court to conclude that an alibi defense was not viable, and Petitioner's counsel did not perform deficiently by failing to raise one. As for the allegation that the victim's mother told Petitioner's mother that she was going to accuse Petitioner of sexual assault, that is not a surprising fact given the victim's disclosure to her mother. There is no allegation that the mother said she was going to *falsely* accuse Petitioner.

With respect to the failure to call witnesses for which Petitioner did not present an offer of proof to the state court, "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013)(quoting *Strickland*, 466 U.S. at 689). The Michigan Court of Appeals nevertheless addressed each of the other witnesses' proposed testimony and indicated that Petitioner's claims were meritless. It was reasonable for the state court to find that the proposed testimony of Petitioner's sisters and friend that they believed the victim and her mother fabricated the accusations would have been inadmissible. Moreover, while these witnesses may have testified that the victim's mother had a reputation for dishonesty, it was reasonable to conclude that Petitioner did not suffer *Strickland* prejudice as it was the defense theory that the victim herself was being untruthful, and these witnesses did not propose to testify as

26

to her reputation in the community for honesty. Finally, with respect to Dr. Okla, as the Michigan Court of Appeals reasonably found, Petitioner presented no offer of proof as to her testimony or even her willingness to testify. The state court reasonably rejected that allegation on that basis alone. *Burt*, 134 S.Ct. at 17.

### 2. Failure to Object to Prosecutorial Misconduct

Petitioner asserts that his trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct discussed above. Because Petitioner's prosecutorial misconduct claims lack merit, any objection made by his attorney would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. See *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007). This allegation is therefore without merit.

### 3. Failure to Object to Admission of Sexual Comments Made by Petitioner

Petitioner next asserts that his trial attorney was ineffective for failing to object to the testimony of Latimer and the victim about inappropriate sexual comments he made to them, such as the size of his penis, that they were sexy, and that they should were sexy clothing. During Petitioner's direct appeal, the Michigan Court of Appeals first addressed the evidentiary predicate of the claim and found that as a matter of Michigan law the testimony was admissible. The state court then concluded that Petitioner's counsel was not ineffective for failing to make a meritless objection:

> Defendant first argues that error occurred with respect to the

admission of testimony regarding defendant's sex-related statements to the victim and her girlfriend. We review the trial court's decision to admit evidence for an abuse of discretion. *People v. Watson*, 245 Mich. App. 572, 575, 289 (2001).

We conclude that there was no error in the admission of defendant's sex-related statements to the victim and her girlfriend. Although defendant argues that the statements were inadmissible other-acts evidence under MRE 404(b), these statements were not governed by MRE 404(b). *People v. Goddard*, 429 Mich. 505, 514-515 (1988). "[A] prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act." *People v. Rushlow*, 179 Mich. App. 172, 174 (1989), aff'd 437 Mich. 149 (1991); see also *Goddard*, 429 Mich. at 518. Moreover, the statements were relevant because they tended to show that defendant's touching of the victim was done for a sexual purpose. See MCL 750.520a(q) (defining "sexual contact"); see also MRE 401 (defining "relevant evidence"). The statements were directed at the victim and her friend, occurred around the same time as the abuse, and showed that defendant thought of the victim in a sexual manner. The fact that the victim's testimony was corroborated by her friend's testimony regarding the statements was also relevant to support the victim's credibility, which was a hotly contested issue at trial.

Moreover, the probative value of the evidence was not substantially outweighed by the danger of any unfair prejudice. *People v. Mills*, 450 Mich. 61, 75 (1995), mod on other grounds 450 Mich. 1212 (1995); MRE 403. Indeed, the challenged evidence was more than marginally probative because, as discussed, it was relevant in terms of proving sexual purpose and corroborating the victim's testimony. See, generally, *People v. Ortiz*, 249 Mich. App. 297, 306 (2001).

Further, there was no error in failing to give an other-acts evidence limiting instruction because this instruction was inapplicable, it was not requested, and defense counsel approved of the instructions as given. Additionally, because it would have been futile to request this instruction, defense counsel did not render ineffective assistance in failing to request it. Counsel was not required to raise meritless objections or make meritless arguments. *People v. Snider*, 239 Mich. App. 393, 425 (2000).

*Garcia*, 2010 WL 2431913, at *1.

This decision was reasonable. In analyzing a petitioner's ineffective assistance of counsel claim, an expression of state law by a state court is binding on this Court. See

generally, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This Court cannot second-guess the state court's determination that the challenged testimony was admissible, and therefore, that any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. See *Bradley v. Birkett*, 192 Fed. App'x. 468, 475 (6th Cir. 2006). This allegation is devoid of merit.

4. Failure to Object to Improper Jury Instructions Regarding Victim's Credibility

Finally, Petitioner asserts that his counsel was ineffective for failing to object to the portion of the jury instructions concerning the evaluation of the victim's credibility. Again, this claim was addressed and rejected by the Michigan Court of Appeals during Petitioner's direct appeal on the merits:

> Next, defendant asserts that he was denied a fair trial by the trial court's instruction that the jury could convict defendant based on the victim's testimony alone, if the testimony established guilt beyond a reasonable doubt. The record reflects that counsel agreed to the giving of the challenged instruction and approved of the trial court's instructions after they were read. Defendant has, therefore, waived any allegation that the challenged instruction was erroneous, because he affirmatively approved of the instruction as given at trial. *People v. Carter*, 462 Mich. 206, 214-215 (2000); *People v. Lueth*, 253 Mich. App. 670, 688 (2002).
>
> Nonetheless, the challenged instruction complied with the law and did not unfairly bolster the victim's credibility. MCL 750.520h provides that "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." The standard jury instruction, CJI2d 20.25, correctly provides: "[t]o prove this charge, it is not necessary that there be evidence other than the testimony of [name complainant ], if that testimony proves guilt beyond a reasonable doubt." See *People v. Smith*, 149 Mich. App. 189, 195 (1986) (finding no error in giving the predecessor of the standard instruction "which accurately states the law as provided in MCL 750.520h"). The instruction did not relieve the prosecutor of the burden of proof beyond a reasonable doubt or remove an element from the jury's consideration. Defendant's reliance on the nonbinding case of *People v. Gammage*, 2 Cal. 4th 693; 828 P.2d 682, 684, 687 (1992), is unavailing because in that case,

the California Supreme Court held that it was proper to give instructions that one witness's testimony was sufficient to prove a fact and that the jury should evaluate witnesses' testimony carefully. Finally, because the challenged instruction in the present case was legally accurate and did not violate defendant's right to a fair trial, defense counsel's performance with respect to it was not deficient; she was not required to raise a meritless objection regarding the instruction. *Snider*, 239 Mich.App at 425.

*Garcia*, 2010 WL 2431913, at *2.

Review of this allegation of ineffective assistance of counsel is foreclosed for the same reason review was barred by the prior allegation. The state court found as a matter of state law that the jury instruction was a correct statement of Michigan law. Any objection would therefore have been denied, and counsel was not ineffective for failing to have made one.

All of the Petitioner's allegations of ineffective assistance of trial counsel were reasonably adjudicated by the state courts. Relief with respect to this claim is therefore barred under § 2254(d).

F. Ineffective Assistance of Appellate Counsel

Petitioner's fifth claim asserts that his appellate counsel was ineffective for failing to raise many of his claims on direct appeal. He argues that this constitutes "cause" to excuse any procedural default of those claims. Because the Court bypassed Respondent's procedural default defense, this claim is moot. And as the Court found, the allegedly defaulted claims do not merit relief. Counsel was not ineffective for failing to raise meritless claims. See *Bradley*, 192 Fed. Appx. at 475.

G. Actual Innocence

Petitioner claims that he has new evidence that proves that he is actually innocent. Referencing some of the facts used in support of his ineffective assistance of trial counsel claim, he asserts that his brother, James J. Super, would have testified that Petitioner was with him at all times when the sexual assaults were alleged to have occurred. He also asserts that Wendy Garcia, Sudie Super, Jennifer Kencht, and Thomas Jaworski were all available to testify at the time of trial and would have attacked the credibility of the victim. Petitioner renews his claim that Katherine Okla could have been called as an expert witnesses to counter the prosecutor's expert witness, Amy Allen. Petitioner also asserts that the victim told Allen that she was present at the interview because her mother "wanted [Petitioner] in jail," and that this statement was omitted from trial. Petitioner claims that the victim's mother made prior false accusations against the victim's biological father. And finally, Petitioner indicates that a letter from a detective who investigated the case states that he personally did not believe the victim's allegations.

First, none of these allegations are new. All these matters were raised by Petitioner in the state courts either on direct appeal or in his post-conviction review proceeding, and the state court's found the allegations unavailing.

Be that as it may, a freestanding claim of actual innocence is nevertheless not cognizable on federal habeas review. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of this alleged evidence of innocence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); see also, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."). Thus, Petitioner's claim of actual innocence based on this evidence, standing alone, provides no basis for habeas relief. See *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

Further, even if such a claim were cognizable, Petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial. If he could, federal habeas review

would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. See *Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases de novo[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); accord *Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Petitioner's proffered evidence of his actual innocence falls far short of the standard enunciated in *Schlup*. Much of what Petitioner cites would not have been admissible at trial. For example the fact that his family members and a police officer did not believe the victim would have been inadmissible. Moreover, Petitioner still lacks a proffer of what Okla would testify to, or whether she would testify at all. And even if he did make a proffer, Allen's testimony was not critical to the prosecutor's case. This was not a case of a very young victim whose testimony may have been affected by a suggestive forensic interview. The victim was a teenager, and Allen's relevance was essentially limited to providing common-sense reasons why children sexually assaulted by family members might delay disclosure. Finally, that the victim said her mother wanted Petitioner in jail is unsurprising – her daughter claimed that Petitioner molested her.

The proffered evidence of innocence does not make it more likely than not that *no*

reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327. This claim does not suffice to excuse any procedural defaults or as an independent basis for granting relief.

H. Motion for Withdrawal of Petitioner's Counsel (Dkts. 22, 25)

Both Petitioner's counsel, (Dkt. 25), and Petitioner himself, (Dkt. 22), have filed motions seeking the removal of Petitioner's counsel from the case so that he can proceed pro se. Under the Model Rules of Prof'l Conduct R. 1.16(b), "[A] lawyer may withdraw from representing a client if . . . good cause for withdrawal exists." Although these rules do not guarantee a right to withdraw, "they confirm that withdrawal is presumptively appropriate where the rule requirements are satisfied." *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009).

Petitioner and his attorney claim that there has been a breakdown in the attorney-client relationship and that they are no longer able to communicate. Petitioner's recent filings–discussed below–indicate that he desires to change the course of proceedings and renew his efforts in the state trial court. Under these circumstances, good cause exists for withdrawal, and the motions will be granted.

I. Motions to Hold Petition in Abeyance, to Amend, and for Evidentiary Hearing (Dkts. 20, 21, 23 and 28).

Petitioner has filed a number of pro se motions, including a motion to hold the case in abeyance (Dkt. 20), motion to amend his petition (Dkt. 21), and motion for an evidentiary hearing. (Dkt. 28). His counsel filed a motion to file a corrected brief in support of the petition at the same time she filed her motion to withdraw. (Dkt. 23).

1. Motion to Amend and Motion to File Corrected Brief (Dkts. 21 and 23)

As the Court understands Petitioner's pro se motions, he seeks to amend his petition because he found the brief originally filed by counsel on July 29, 2016, (Dkt. 16), inadequate. Subsequent to the filing of this motion, however, Petitioner's counsel filed an amended brief in support of the petition. (Dkt. 23). Petitioner has filed no opposition to this amended brief which appears to adequately present the Court with all of Petitioner's habeas claims.

Federal Rule of Civil Procedure 15 provides that the Court should freely allow a party to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). Here, in light of the fact that Petitioner's claims have now all been adequately presented to the Court, justice does not require at this late date that Petitioner be given an opportunity to file an additional pleading. The Court has before it not only the corrected brief filed by counsel, but it also has the pro se briefs filed by Petitioner in the state courts on direct appeal and during his post-conviction proceeding. The motion to amend, (Dkt. 21), will therefore be denied. The motion to file the corrected brief in support of the petition, (Dkt. 23), will be granting as that brief adequately presents the substance of Petitioner's habeas claims.

2. Motion to Stay Case (Dkt. 20)

Petitioner has also filed a motion to stay the case and hold it in abeyance while he attempts to present additional claims to the state court. (Dkt. 20). Petitioner has filed copies of what he either has or intends to file in the state trial court. (Dkts. 26 and 27). A federal district court has discretion to stay a petition to allow a petitioner to present unexhausted claims to the state courts and then return to federal court on a perfected petition. See

*Rhines v. Weber*, 544 U.S. 269, 276 (2005). Stay and abeyance is available only in "limited circumstances" such as when the one-year statute of limitations poses a concern, and when the petitioner demonstrates "good cause" for the failure to exhaust state remedies before proceeding in federal court, the petitioner has not engaged in intentionally dilatory litigation tactics, and the unexhausted claims are not "plainly meritless." *Id.* at 277.

The Court will deny the motion to stay because Petitioner's new claims are plainly meritless. Petitioner claims that he has new evidence that proves his innocence that was suppressed by the prosecutor. The materials filed by Petitioner in support of his assertions, however, do not exculpate him at all. The police report made by Latimer's mother *supports* the victim's mother's testimony that Petitioner was communicating with under-aged girls on the internet. See Dkt. 26, at 35, 37. The police report indicates that Latimer's mother complained that her daughter was contacted by Petitioner on social media, and that he was "attempting to befriend her for the wrong reasons." Id. The redacted report substantiates the allegation that Petitioner told Latimer that she was "sexy." Id. Though no charges were brought as a result of this contact between Latimer's mother and the police, it is certainly far from evidence indicating his innocence that he claims it to be. Nor does the proffered transcript of the internet chat do Petitioner any favors. In it he laments to a fourteen-year-old girl about his failed marriage, and tells her, "Pimps don't die, they just pimp harder." Id., at 40.

Petitioner also offers a copy of a recent text-message chat he had with Latimer from prison. Id., at 47-58. Latimer does not recant any of her testimomoy in the exchange. Rather she states simply: "this is something that I have never wanted to be a part of," that she "was in 6th grade" when the events transpired, that she does "not know what

happened," and that she does not "have any answers for you nor do I want to be involved in something I really know nothing about." Id. Petitioner makes much of the concession by Latimer that she did not know what happened, but the prosecution never claimed that Lattimer witnessed any of the sexual assaults. Rather, Lattimer merely testified about Petitioner's inappropriate sexual comments when she visiting the victim's house in the sixth grade. See Dkt. 10-5, at 250-263. She never purported to know whether Petitioner actually sexually assaulted the victim. Id. The transcript of the text chat does not recant any of that testimony.

There is no indication in any of the new materials presented by Petitioner either that the prosecutor suppressed any evidence or that the material is exculpatory. All Petitioner has demonstrated is that Latimer's mother went to the police with complaints that Petitioner was contacting her fourteen-year-old daughter, that it is true Petitioner contacted the teenager on social media, that the contact evidences at a minimum inappropriate communication by an adult who tells a young girl that he will "pimp harder," and that now years after the prosecution Latimer unsurprisingly does not want anything to do with Petitioner. In sum, the claims Petitioner wishes to raise in the state courts are plainly meritless, and do not provide a basis for granting his motion to stay the case. That motion, (Dkt. 20), will therefore be denied.

3. Motion for Evidentiary Hearing (Dkt. 28)

Finally, Petitioner has filed a motion for an evidentiary hearing. (Dkt. 28). The motion seeks to introduce the proffered evidence he presented to the state courts in support of his claims of ineffective assistance of counsel and suppression of evidence by the prosecution.

37

"AEDPA restricts the availability of federal evidentiary hearings. For a claim that was adjudicated on the merits in a state court proceeding, sections 2254(d)(1) and (d)(2) of AEDPA apply, and the district court is limited to the record that was before the state court at the time." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012). The state courts rejected Petitioner's ineffective assistance of counsel and suppression of the evidence claim on direct review and during his post-conviction review proceeding on the merits. Because the state courts adjudicated the merits of Petitioner's claims, this Court is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Accordingly, the Court denies the request for an evidentiary hearing.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because all of his claims are devoid of merit. The Court will therefore deny a certificate of appealability.

The Court will, however, grant permission to appeal in forma pauperis because any

appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court:

1) **DENIES** the petition for a writ of habeas corpus,

2) **DENIES** a certificate of appealability,

3) **GRANTS** permission to appeal in forma pauperis,

4) **DENIES** Petitioner's motion to stay. (Dkt 20).

5) **DENIES** Petitioner's motion to amend. (Dkt. 21).

6) **GRANTS** Petitioner's motions for withdrawal of counsel. (Dkts. 22 and 25).

7) **GRANTS** Petitioner's motion to file corrected brief. (Dkt. 23), and

8) **DENIES** Petitioner's motion for evidentiary hearing. (Dkt. 28).

**SO ORDERED.**

s/ Nancy G. Edmunds
Hon.Nancy G. Edmunds
United States District Judge

Dated: 8/1/17